IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FILED _____ ENTERED
LODGED _____ RECEIVED

FEB 26 2025

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY DEPUTY

DAVID PAUL BICKFORD
   19831 Harmony Hill Lane
   Boonsboro, MD 21713

     Plaintiff

     V.

WES MOORE, in his official capacity
as Governor of Maryland,
   100 State Circle
   Annapolis, MD 21401
   Anne Arundel County

     and

ANTHONY BROWN, in his official
capacity as Attorney General for Maryland,
   200 Saint Paul Street
   Baltimore, MD 21201
   Baltimore County

     Defendants.

Civil Action No. EA-25-cv-658

---

**VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
**42 U.S.C § 1983**

**INTRODUCTION**

1. Plaintiff, David Paul Bickford ("Mr. Bickford"), pro se, files this complaint against the above captioned Defendants in their official capacities as state officials responsible for administering and/or enforcing Maryland's laws governing the sexual exploitation of minors.

2. Mr. Bickford is a Father, Grandfather, and a Maryland resident who desires to be able to

1

express his love and admiration for his grandchild in his own way and on his own terms, free from arbitrary government interference.

3.    Because Mr. Bickford is a grandparent, and has a unique personality, he wants to express his love for his grandchild in a variety of ways including ways which are personally beneficial.

4.    As a part of Mr. Bickford's responsibility and privilege as a Grandfather, he believes that it is important to celebrate his grandchild's life by photographing and filming him, talking to him, writing to him, hugging, kissing and caressing him, and encouraging him to adopt a strong sense of positive image and high sense of self esteem.

5    But Maryland's sexual abuse of a minor law strips Mr. Bickford of the freedom to choose what messages to convey, what photographs to take, what filming to conduct, and what non-verbal communication to engage in when he is in his grandparent role.

6.    Maryland Law makes it unlawful for Mr. Bickford to engage in any otherwise legal form of communication or expression that is disliked by the Defendants, or that the Defendants may believe "took advantage of or unjustly or improperly used the child for his...own benefit." See authoritative construction for the term 'exploitation' Md. Criminal. Code §3-602(a)(4)(i) defined in *Brackins v State*, 84 Md. App. 157, 162 (1990).

7.    Maryland law also makes it unlawful for "[a] parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a minor" or a "household member or family member" (henceforth "parents"), Md Criminal Law §§ 3-602(b)(1) and 3-602(b)(2), including Mr. Bickford, to engage in such otherwise legal expressive writing if that message is viewed as "improper or unjust," (*Walker v State*, 432 Md. 587 (2013)) or otherwise legal but disliked photography (*Scriber v State*, 236 Md. App. 332 (2018)).

2

8.     Maryland law does not describe or limit what conduct or expression may be viewed as "taking advantage of" or "unjustly" or "improperly."

9.     Therefore, Mr. Bickford cannot freely photograph or film his grandson when his grandson is unaware he is being filmed, or while his grandson is in his bedroom, or when his grandson may be partially nude; nor can Mr. Bickford write letters describing his love for his grandson, or to express his desire to vacation with his grandson, or to express his desire to hug, kiss or hold hands with his grandson; or to express love through physically intimate acts such as kissing, hugging, or patting the buttocks of his grandson.

10.     Because Mr. Bickford must self censor to avoid prosecution under Maryland law and must refrain from speaking his desired message or engaging in his desired expressive activity, Maryland law prevents him from expressing his desired message – that he loves his grandchild, wants to spend time with his grandchild, wants to express his love in writing to is grandchild, and wants to photographically record moments with his grandchild that may be precious, amusing or embarrassing to either.

11.     If Mr. Bickford was to convey his desired message in a manner that Defendants view as "improper," he would face a sentence that would carry a prison term of up to 25 years, lifetime probation and lifetime registration as a sex offender. Even if his conduct or expression was "just" under specific Maryland laws tailored to determine whether expression is protected, if Defendants view the expression as "improper," Mr. Bickford would face these harsh penalties. Even if his expression was specifically and expressly protected under a specific Maryland law tailored to determine whether expression is protected, if Defendants viewed the specifically protected expression as "taking advantage of" or "unjust" or "improper," Mr. Bickford would

be subjected to these extreme penalties.

12.    Thus, solely because of Maryland law, Mr. Bickford is refraining from expressing his love for his grandchild by freely taking photographs or films of his grandchild, or freely writing or speaking to his grandchild, or hugging and kissing his grandchild.

13.    To restore his constitutional freedom to express himself with his grandchild without fear of arbitrary condemnation, Mr. Bickford asks this Court to enjoin Maryland Criminal Code Annotated §3-602, sexual abuse of a minor and declare it violates his rights on its face and as it is applied to expression.

## JURISDICTION AND VENUE

14.    This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871. 42 U.S.C § 1983.

15.    This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343.

16.    This Court has authority to award the requested declaratory relief under 28 U.S.C. §§ 2201-02 and Federal Rule of Civil Procedure 57; the requested injunctive relief under 28 U.S.C. § 1343 and Federal Rule of Civil Procedure 65.

17.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all events giving rise to the claims herein occurred within the District of Maryland and all Defendants reside in the District of Maryland.

## IDENTIFICATION OF PLAINTIFF

18.    Plaintiff David Paul Bickford is a non-religious person who does not associate shame with nudity or sexuality; and, he is also a grandparent recently released from prison.

19. He is also a resident of the State of Maryland and a citizen of the United States of America.

## IDENTIFICATION OF DEFENDANTS

20. Wes Moore, as Governor of Maryland, and as one with the authority to administer and enforce the law at issue, see, e.g., Maryland Criminal Code Annotated § 3-602, is named as a defendant in his official capacity.

21. Anthony Brown, as Attorney General for Maryland, as the State's top prosecutor with the authority to administer, apply, and enforce the law at issue, see, e.g., Maryland Criminal Code Annotated § 3-602, is named as a defendant in his official capacity.

22. Anthony Brown and Wes Moore reside in the District of Maryland.

## STATEMENT OF FACTS

**Maryland Law Prohibits Protected Expression**

23. Maryland's sexual abuse of a minor statute ("SAMS") bans a grandparent from exercising expression that is specifically protected under Maryland's possession of child pornography law, § 11-208(d), when Defendants arbitrarily declare it to be exploitation of a minor.

24. Maryland Criminal Law § 11-208(d) provides that "Nothing in this section may be construed to prohibit a parent from possessing visual representations of the parent's own child in the nude unless the visual representations show the child engaged: (1) as a subject of sadomasochistic abuse; or (2) in sexual conduct and in a state of sexual excitement."

25. Maryland Criminal Law § 11-207, child pornography, has been authoritatively construed by the Maryland Supreme Court to "balance the right to freedom of expression against the right

of the State to protect children against sexual exploitation." *See Outmezguine v State*, 355 Md. 20, 36 (1993).

26.     SAMS prohibits a parent from, and severely punishes a parent for, both producing visual representations of their own child, which are clearly within the right to freedom of expression under the Outmezguine balancing test, and from "possessing visual representations of the parent's own child in the nude unless the visual representations show the child engaged: (1) as a subject of sadomasochistic abuse; or (2) in sexual conduct and in a state of sexual excitement" as specifically protected in Maryland's possession of child pornography law.

27.     Defendants apply SAMS using the term "exploitation" (SAMS § 3-602(a)(4)(i)) which is not defined within the law but has been authoritatively construed to mean when a defendant "took advantage of or unjustly or improperly used the child for his or her own benefit" *Brackins v State*, 84 Md. App. 157, 162 (1990); *Walker v State*, 432 Md. 587 (2013).

28.     The phrase "took advantage of or unjustly or improperly used the child" is undefined and does not prioritize any one term; for instance, if a person's expressive act is "just" under a Maryland law, it can be deemed improper when it is disliked by the Defendants.

29.     This lawsuit specifically challenges the "exploitation" provision of SAMS, which is codified under § 3-602(a)(4)(i) and will be referred to as "SAMS."

30.     This lawsuit broadly challenges the facial validity of SAMS as well as the restrictive and disparate way in which it is applied to a "household member or family member['s]" expression.

31.     The challenged law provides that it is unlawful for a "household member or family member to cause sexual abuse to the minor." See Md Criminal Law § 3-602(b)(2).

32.     SAMS does not include any standards or criteria for Defendants to abide by in

6

determining whether a grandparent's expression communicates a message that is improper, unjust, or a taking advantage of, or whether the grandparent benefited from the exercise of his or her expression.

33.    SAMS does not include any standards or criteria for Plaintiff to abide by in determining what expression may be proscribed under this law; that is, there is no scienter.

34.    If Mr. Bickford takes a picture of his grandchild while he is shirtless and flexing his bicep muscles, the images would not necessarily qualify as child pornography, and they would be protected under § 11-208(d). However, if the defendants thought that the pose was in some way attractive or alluring to Mr. Bickford, Defendants would hold him criminally liable under SAMS as evidenced by the State's prosecution of Mr. Scriber. (*Scriber v State*, 236 Md. App. 332 (2018)).

35.    To illuminate that Defendants use SAMS as a more restrictive restraint on speech, after the State Legislature added "lascivious exhibition of the genitals" to the category of sexual conduct, under the State's child pornography law, the Maryland Appellate Court proclaimed that the scope of SAMS "prohibits a wider array of conduct than just child pornography or prostitution" *Tureene v State*, No. 714, Sept.2022, filed June 28, 2023 (quoting *Walker v State* 432 Md, 587, 622 (2013)).

36.    If Mr. Bickford writes sentiments of longing to see his grandson combined with written expressions of a desire to hold, hug, kiss and spend time with his grandson, Defendants may view the combination of those messages as improper and hold him criminally liable under SAMS as evidenced by the State's prosecution of Mr. Walker (*Walker v State*, 432 Md. 587 (2013)).

37. If Mr. Bickford pats his grandchild on the buttocks, but not for his own sexual gratification, Mr. Bickford would face charges of a fourth degree sex offense and child sex abuse. Upon a finding that the buttock pat was not for sexual gratification, and thus not a fourth degree sex offense, Defendants would hold Mr. Bickford criminally liable under SAMS as evidenced by the prosecution of Mr. Tribbitt (*Tribbitt v State,* 403 Md 31 (2008)).

38. If Defendants become aware of an alleged violation of SAMS, Defendants will investigate the alleged violation.

39. If Defendants conclude that there has been a violation of SAMS, Defendants will use their authority under SAMS to prosecute the violation.

40. Defendants' power under SAMS includes the ability to determine whether probable cause exists for crediting charge that expression amounts to sexual abuse of a minor.

41. Defendants' power under SAMS includes the ability to investigate a charge alleging that lawful expression amounts to sexual abuse of a minor.

42. Defendants' power under SAMS includes the ability to file criminal charges alleging that lawful expression amounts to sexual abuse of a minor.

43. Defendants' power under SAMS includes the ability to hold hearings regarding charges that expression amounts to sexual abuse of a minor.

44. Defendants' power under SAMS includes the ability to obtain search and seizure warrants when evaluating charges that expression amounts to sexual abuse of a minor.

45. Defendants' power under SAMS includes the ability to compel the separation of a child from their home without a hearing while evaluating charges that lawful expression amounts to sexual abuse of a minor.

46.    Defendants' power under SAMS includes the ability to manipulate and/or equivocate the definition of exploitation.

47.    Defendants use their powers under SAMS to nullify protections, under laws that are specifically tailored to regulate expression, and incarcerate parents and grandparents for engaging in expression that is protected under those laws.

**Defendants Apply SAMS in a Content and Viewpoint Based Manner**

48.    Defendants apply SAMS in a way that allows certain content and viewpoint but punishes other content and viewpoint regarding expression.

49.    For instance, Todd Scriber was a prosecuted for taking non-pornographic photographs of four students. Count I pertained to the alleged photographing of "N.S." although no photo existed; Count II related to a picture of "R.K" which was described as "R.K." standing in a classroom with her arms outstretched and cleavage exposed;" Count III related to pictures of "M.S.'" "buttocks, taken in the classroom as 'M.S.' was bending over;" Count IV was related to pictures of "G.E." "taken from behind, of 'G.E.' standing in the classroom. *Scriber v. State*, 236 Md. App. 332 (2018).

50.    The Trial Court's assignment of criminal liability to Scriber was Affirmed by the Maryland Appellate Court based upon the content of the photographs. Counts III produced a guilty verdict because the photos depicted the "young woman's legs and buttocks. That's all." *Scriber at* 342. Count IV produced a not guilty verdict because the depiction was not as "descriptive" as the other photos. *Scriber* at 342.

51.    Similarly, in *Bickford v State,* Sept. Term, No. 95 (2018), the Appellate Court affirmed a conviction for SAMS based on content that was protected for Mr. Bickford to possess under the

9

child pornography laws, but in the Defendants' view, the content was improper and for Bickford's "sexual gratification."

52.    In *Walker v. State*, 432 Md, 587 (2013), Defendants' content and viewpoint based application of SAMS yielded a conviction for the act of writing letters to a minor containing "sexual undertones" and, from the Defendants' point of view, were exploitative. Like the photos in Scriber, the writings were – and still are – protected under Maryland's narrowly tailored laws enacted to regulate such expression.

53.    While the images produced by Scriber and Bickford do not amount to the sexual exploitation of a minor, under the law held to "balance the right to freedom of expression against the right of the State to protect children against sexual exploitation," (*Outmezguine v State*, 355 Md 20, 36 (1993)), and Walker's notes were never placed outside the mantle of First Amendment protection, Defendants' content and viewpoint-based application of SAMS allowed them to prosecute and convict both Scriber and Walker.

54.    The holding in *Scriber* is inherently viewpoint-based because Defendants punish Scriber for his expressed view that the display of his student's legs and buttocks is sexy, provocative, or attractive while leaving unpunished the student's expressed view that certain clothing positively accentuates her female form or that she is aware of her own sexuality. Here Defendants dislike Scriber's viewpoint and punish him for it while condoning the student's viewpoint and allowing her to go unpunished for promoting it.

55.    Defendants apply SAMS to equivocate the term "sexual exploitation" to hide their discriminatory views. Such equivocation is on full display when comparing *Tribbitt v State,* 403 Md 31 (2008) and *Tate v State,* 182 Md. App. 114 (2006) with *Scriber, Walker* and

10

*Bickford.* The *Tate* Court held that Tate was guilty under SAMS because "the criminal child abuse statute contains no such element of specific intent or special <u>mens rea.</u>" *Tate v State,* 182 Md. App. 114, 128 (2006)(emphasis supplied); the *Tribbitt* Court State followed precisely. However, in *Scriber,* the Appellate Court affirmed a conviction that was based on the specific intent "to memorialize this young women's backside." id at 342; and, in *Bickford,* the Court added the very element it decided did not exist in *Tate,* holding that "[a] jury could reasonably conclude that Bickford recorded his daughter getting in and out of the shower **for his own sexual gratification...**"(emphasis added).

56.    Defendants apply SAMS to promote their own personal biases, beliefs, viewpoints, or predilections in spite of the State Legislatures authorized promotion of its compelling interest in protecting children from sexual exploitation.

**<u>Defendants' Unconstitutional Application of SAMS Disparately Impacts Parents, and other Guardians.</u>**

57.    The right to freedom of expression for parents is more restricted under SAMS compared to those who are not parents of children.

58.    The punishment under SAMS for engaging in legal or protected expression is far greater than that allowed under constitutionally acceptable laws that punish illegal expression.

59.    In *Tribbitt v State*, 403 Md 31 (2008), Mr. Tribbitt, a teacher determined to have temporary care or custody of his minor victim, was charged with a fourth degree sex offense as well as sexual exploitation of a minor for having allegedly inappropriately touched his student. Mr. Tribbitt was acquitted of the fourth degree sex offense, yet convicted of sexual abuse of a minor. The Defendants successfully argued on appeal that, because there is no specific intent

element required to sustain a conviction under SAMS, as there is for a conviction under the fourth degree sex offense law, a jury could rightfully conclude that the touching was not for Tribbitt's own sexual benefit but that the touching still constituted child sex abuse.

60.    In *Bible v State*, 411 Md 138 (2008), the Maryland Appellate Court found that there was insufficient evidence to prove the element of intent for a fourth degree sex offense related to the allegation of inappropriate touching of a child's buttocks in a toy store. Bible was acquitted of the sex offense for lack of intent and faced no further criminal liability related to the expressive conduct of touching a child's buttocks.

61.    Defendants apply SAMS to gain convictions against parents that cannot be gained against non-parents. The expressive conduct shared by Tribbitt and Bible resulted in disparity of outcome; not because the acts were different, but solely because Tribbitt was a "parent or other person who has permanent or temporary care or custody or responsibility for the supervision of a minor." (see SAMS, § 3-602(b)(1)).

62.    Both the *Tribbitt* and *Bible* Courts held that the acts committed did not sexually molest or exploit a child under a Fourth degree sex offense – a constitutionally legal standard. However, Defendants apply SAMS to Tribbitt, completely devoid of scienter or mens rea, to overrule that constitutionally legal standard, resulting in the abridgment of Tribbitt's right to freedom of expression compared to Bible's right to freedom of expression.

63.    Defendants apply SAMS to overrule all Maryland laws written specifically to determine when a child is sexually exploited. For instance, a non-parent alleged to have violated the Maryland law prohibiting the sexual solicitation of a minor may be acquitted of that charge because that law determined the specific speech was protected – perhaps as hyperbole or satire.

A parent, however, alleged to have violated Maryland's solicitation of a minor law, who is acquitted of such solicitation, may have their speech punished severely when Defendants apply SAMS.

64.     To adopt the Defendants version of SAMS as correct would necessarily mean that when non-parents sexually exploit children it is permissible; or, that many acts of sexual exploitation are only sexual exploitation when committed by parents, or that the social status of the actor, and not the act, is the gravamen of the offense.

65.     Defendants apply SAMS to disparately impact sentencing as well. In *Bickford v State*, Bickford was alleged to have filmed his child in violation of Maryland Criminal law § 3-902, visual surveillance with prurient intent. Although the Appellate Court found that the filming did not rise to the level of criminal surveillance, Defendants applied SAMS to both nullify this protection of law afforded to non-parents, and produce a sentence including 15 years of incarceration – a severe punishment.

66.     In the Bickford case, Defendants requested a sentence of 15 years in prison under SAMS. The charged surveillance violation carries an 18 month maximum prison term, and when the victim is a minor, a requirement to register as a tier I sex offender for up to 10 years is added. Ultimately, under SAMS, Bickford was sentenced, related conduct that neither rose to the level of child pornography nor to visual surveillance with prurient intent, to a term of 25 years in prison with all but 15 years suspended, 5 years probation, and is required to register as a Tier III sex offender for life. He is extra-judicially being forced to take part in the COMET program (a program to monitor the most violent sexual predators) and to remain on probation for life.

67. Because Defendants apply SAMS in an unconstitutional manner to disparately impact parents like Mr. Bickford, the expressive rights of Mr. Bickford as a grandparent are abridged, and he is punished more severely for engaging in expression if that expression is unlawful; and, parents like Mr. Bickford will be severely punished for expression that is protected for non-parents to engage in.

**Defendants Equate Exploitation with Protected Expression**

68. Defendants interpret the ban on committing "an act of sexual...exploitation" to include speech protected under narrowly tailored laws enacted to determine the difference between sexual exploitation and protected speech.

69. Defendants have publicly taken this position in litigation.

70. Because the Defendants consider expression that is legal for non-parents to engage in to be illegal for parents to engage in, the exploitation provision bans parents from the unabridged exercise of their right to freedom of expression under the First Amendment.

71. Such banned communications includes when a parent, such as a teacher, takes a photograph of a student wearing a short skirt depicting her backside and bare legs, determined to be protected expression under the child pornography law, to express the idea that, in this era, children wear clothing that is far too revealing or that the student's female form is particularly attractive.

72. Such banned communication includes a sarcastic solicitation for sex, determined to be protected expression under the solicitation of a minor law, with no intent to actually solicit sex from a minor.

73. Such banned communication includes friendly touching, or wrestling that may involve

an inadvertent touching of intimate areas but not for sexual gratification.

74.    Such banned communication includes writing in a manner that may be viewed as flirtatious, or perhaps carry sexual undertones, no matter how harmless the writing may be.

**David Bickford and His Role as a Grandparent**

75.    David Bickford is a non-religious person who believes that there is no legitimate or rational association between nudity, sexuality and shame.

76.    David's non-religious views and beliefs are central to his dignity, autonomy and identity.

77.    David uses sarcasm, hyperbole, satire, and shocking, offensive language when communicating ideas to others, including when expressing love, caring, understanding, empathy, sympathy, fear, and sadness, which is central to his person-hood.

78.    David believes that there are multiple interests he should have in his Grandson including being a teacher, a confidant, someone who encourages, a recorder, and a friend.

79.    If his Grandson is bouncing and dancing on his bed while singing along with his favorite song, David believes he should take advantage of his Grandson's ignorance to his presence and take a candid photograph because it would greatly benefit David to do so.

80.    David believes that because humans are social creatures, his Grandson is a social creature and needs several kinds of social interaction to be a healthy minded and happy boy – even if some interaction may seem unjust or embarrassing for his Grandson.

81.    David believes that part of his role as a Grandparent is to document his grandson's accomplishments and failures. David may do this by photography, writings, or memorization through story telling.

82.    David believes that part of his role as a Grandparent is to reassure his Grandson when he

is doing the right thing, but seems unsure at the moment; reward good behavior through positive reinforcement; and, rebuild confidence after failure through empathy and bonding.

83.   Thus, David believes that he should hug, hold, kiss, caress, hair tussle, and fanny pat his Grandson for the benefit of both. David wishes to exercise these expressions in a way that may be disliked by Defendants, but does not amount to a sexual offense in any degree.

84.   David believes that he should photograph his Grandson in a way that does not constitute child pornography, or amount to a privacy violation, including during moments that would be particularly embarrassing for his Grandson, or be viewed as improper, or may appear to be for David's benefit.

85.   David believes that writings are a good way to express love for his Grandson. David wishes to write to his Grandson to express his desires to be with his Grandson in a way that does not violate any narrowly tailored laws regulating what may be written to a child, but may be viewed as improper or for David's own benefit.

86.   David often uses sarcasm, satire, and shocking humor which some may find offensive and inappropriate to use around children. But because David doesn't really care about how others view him, his legal speech, or his legal conduct. David does not care to entertain the validity of those viewpoints or have those viewpoints imposed in a way that undermines his personal autonomy.

87.   Therefore, David believes that when in his grandparent role, he must stay true to himself and his unique personality and must not censor his lawful speech out of fear that it may be offensive.

88.   David has refrained from photographing his Grandson on three separate occasions: first,

October 12, 2024, when Grandson first met David after his release from prison; second, November 23, 2024 while Grandson was visiting with his Son and Daughter in law; and third, December 24, 2024 while Grandson, Son, and Daughter in law were receiving Christmas gifts from him. In each instance David requested that his son or daughter in law send pictures to him after they had concluded their visit.

89. David chanced holding his Grandchild, but refrained from hugging or kissing him. David asks his Son to give his Grandson a hug and a kiss for him often.

90. David desires to, among other expressive acts, photograph, hug and kiss his Grandson.

**SAMS Usurping Mr. Bickford's Freedom**

91. As a Grandfather to his Grandson, David Bickford is a "family member," subject to SAMS, Md. C.L. §§ 3-602(a)(4)(i) and 3-602(b)(2).

92. SAMS exploitation provision makes it illegal for David to engage in the expression referenced in paragraphs 26, 34, 36, 37, 72-74, 79-87.

93. This is because SAMS exploitation provision makes it unlawful for a family member to engage in expressive conduct that is protected under Maryland's narrowly tailored laws.

94. SAMS makes it unlawful for a Grandfather to take photographs of his Grandson when there is no sexual conduct, but are none-the-less viewed as improperly taken by the Defendants.

95. SAMS also makes it unlawful to for a Grandfather to take photographs of his Grandson absent an actual privacy violation, but when the Defendants view the photography to violate privacy or view it as improperly taken.

96. SAMS prohibits Mr. Bickford, in his Grandparent role, to make any contact with any intimate area of his Grandchild, including a pat on the buttocks, when it is done for Plaintiff's

17

own "pleasure, amusement, gratification, or interest."

97.    SAMS prohibits Mr. Bickford, in his Grandparent role, from photographing or filming his Grandson bouncing and dancing on his bed while singing along with his favorite song because it would take advantage of his Grandson's ignorance to his presence and be for Mr. Bickford's own pleasure, amusement, gratification, or interest.

98.    SAMS prohibits Mr. Bickford, in his Grandparent role, from asking his Grandson if he wanted to "sleep with him" when not a solicitation for sex and for Mr. Bickford's own pleasure, amusement, gratification, or interest.

99.    In short, SAMS prohibits Mr. Bickford, in his Grandparent role, from engaging in any disliked form of verbal or non-verbal communication, or expression or expressive activity, that is protected under a narrowly tailored law enacted specifically to protect minors against sexual exploitation, when for Mr. Bickford's own pleasure, amusement, gratification, or interest.

100.   If not for SAMS, and Defendants application of SAMS, Mr. Bickford would have already taken photographs and films of his Grandson for Mr. Bickford's own pleasure, amusement, gratification, or interest.

101.   SAMS, and Defendants application of SAMS, is the only reason why Mr. Bickford has refrained from expressing his love for his Grandson through physical acts of touching, prolonged holding, hugging, or kissing, or by verbally conveying the profound love he feels for Grandson or the abundant joy he has in knowing Grandson exists.

**SAMS Approves of Non-parental Expression**

102.   As explained, SAMS is preventing Mr. Bickford from lawfully celebrating and promoting his love and adoration for his Grandchild in the lawful manner he desires.

103.  However, SAMS allows non-parents to express their love and adoration for Mr. Bickford's Grandchild unless unprotected under narrowly tailored laws.

104.  A non-parent can photograph and film Mr. Bickford's Grandchild improperly and for their own amusement because non-parents are not subjected to arbitrary determinations regarding speech and expressions. Non-parents are limited only by the child pornography laws.

105.  A non-parent would be free to tell Mr. Bickford's Grandchild to "suck it" as a way of saying "get the hell out of my face," because non-parents are not subjected to arbitrary determinations regarding speech and expressions. Non-parents are limited only by the sexual solicitation of a minor law.

106.  This distinction in treatment is a baseless and irrational view that parental expression must be regulated more strictly by making the gravamen of the offense under SAMS, which purports to prohibit "an act of sexual...exploitation," the social status of the alleged offender.

107.  If a non-parent puts his hand on Mr. Bickford's Grandchild's buttocks for the non-parent's own amusement, but not for sexual gratification, that conduct is permitted under a sexual offense in the fourth degree because there was no sexual gratification; and, that conduct is permitted for a non-parent under SAMS because the non-parent is not a family member. For example, in *Bible v State*, as explained in paragraph 59, Bible touched a child's buttocks, making the child so uncomfortable that she called Bible a pervert, but in the absence of proof of intent, no crime was committed.

## ALLEGATIONS OF LAW

108.  Plaintiff David Paul Bickford is subject to and must comply with Maryland law,

including the provisions of Maryland Criminal Code Annotated § 3-602, sexual abuse of a minor.

109. At all times relevant to this Complaint, each and all of the acts alleged herein were attributed to the Defendants, which acted under color of a statute, regulation, custom, or usage of the State of Maryland.

110. The impact of chilling and deterring Plaintiff David Paul Bickford from exercising his constitutional rights constitutes imminent and irreparable harm to David Paul Bickford as a result of Defendants' policy and practice.

111. Plaintiff David Paul Bickford has no adequate or speedy remedy at law to correct or redress the deprivation of rights under the United States Constitution by Defendants.

112. Unless the conduct of Defendants is enjoined, Plaintiff David Paul Bickford will continue to suffer irreparable injury..

## CAUSES OF ACTION

**First Cause of Action:**
**Violation of the Free Speech Clause of the First Amendment of the United States Constitution; Content and Viewpoint Discrimination, Unbridled Discretion, Unconstitutional Conditions, and Overbreadth**

113. Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1-112 of this complaint.

114. Plaintiff David Paul Bickford is a Grandfather to his Grandson.

115. Plaintiff David Paul Bickford is a Grandfather who desires to express himself with his Grandson in accordance with his feelings, personality, wishes and beliefs.

116. Plaintiff, in accordance with his feelings, personality, wishes and beliefs will express

himself in any manner he sees fit so long as his expression complies with all of Maryland's narrowly tailored laws enacted to regulate specific categories of speech.

117. Plaintiff wishes to photograph his Grandson in any situation unless prohibited under the child pornography laws or privacy laws that regulate the filming of minors or others.

118. Plaintiff wishes to touch, hold, kiss, caress, and express his love non-verbally unless such expression would constitute a fourth degree sex offense, sexual conduct or sexual contact under Maryland law § 3-301.

119. Plaintiff wishes to speak to his Grandson in anyway imaginable, unless such speech violates Maryland's sexual solicitation of a minor law or other narrowly tailored laws specifically enacted to regulate the spoken word.

120. Plaintiff wishes to write to his Grandson in anyway imaginable, including to write professions of love, a desire to be with him, a desire to hug and kiss him, a desire to take him on vacation, and a desire to hold his hand, unless it violates a Maryland law narrowly tailored to regulate a specific category of speech.

121. In doing these things, Plaintiff promulgates speech.

122. Plaintiff's wishes to write, speak, touch, hold, caress, hug, kiss, photograph and film his Grandson in the manner described in paragraphs 1-121 all constitute protected speech under the First Amendment.

**SAMS is Content Based and Viewpoint Discriminatory**

123. The First Amendment's Free Speech Clause prohibits laws that regulate protected speech based on its content or viewpoint.

124. SAMS' speech ban is content-based because it regulates speech about the way parents,

family members and guardians express themselves with children – while leaving as unregulated speech on the virtually unlimited number of topics not listed in SAMS.

125. For example, SAMS prohibits a family member from taking nude pictures of a child in the bathroom that are void of sexual conduct, for his or her own amusement or interest or gratification, but allows for all sorts of pictures of children to be taken.

126. This is content-based discrimination forbidden by the First Amendment.

127. SAMS is also viewpoint discriminatory.

128. Defendants enforce SAMS in a viewpoint discriminatory manner at least in relation to the topic of child exploitation.

129. When a parent engages in expressive conduct with a child that is determined to be protected under a narrowly tailored law and Defendants view the expression as acceptable, Defendants will not prosecute or threaten to prosecute that parent.

130. Defendants will, however, prosecute a parent under SAMS for engaging in expressive conduct with a child determined to be protected under a narrowly tailored law if Defendants dislike the images and dislike the way the pictures were taken.

131. If Plaintiff engages in expression with his Grandson that is not sexual exploitation under a narrowly tailored law, but Defendants dislike the expression, Defendants will prosecute Mr. Bickford.

132. Thus, in order to avoid prosecution and punishment in Maryland, Plaintiff must refrain from taking pictures, or engaging in other expressions with his Grandson, that Defendants may dislike, or find distasteful, or suspect that the expression was for the Plaintiff's amusement or interest or gratification.

133.    This singling out, punishing, suppressing, and deterring certain speech solely based on Defendants' viewpoint about what is acceptable parental expression is unlawful viewpoint-based discrimination.

134.    If Plaintiff was to engage in his desired expressions, he could violate SAMS content- and viewpoint-based restrictions on speech and face investigation, prosecution and severe penalties for a violation.

**SAMS Grants Defendants Unbridled Discretion**

135.    The First Amendment's Free Speech Clause prohibits the government from regulating expression based on guidelines that give officials unbridled expression to arbitrarily allow some expression and prohibit other expression.

136.    In the application of SAMS, Defendants have shown that they have unbridled discretion to arbitrarily allow some expression and prohibit other expression.

137.    If a teacher photographs his students inconsistent with the personal predilections of the Defendants, Defendants can punish the teacher for taking those photographs.

138.    Defendant's can do so by saying the teacher did not give a good reason for the photography, or alleging some nefarious reason for taking the photographs, even if the depictions are protected under Maryland's privacy laws and Child pornography laws.

139.    Defendant's actions with respect to Todd Scriber and Karl Walker illustrate this point.

140.    If Mr. Bickford takes a photograph of his Grandson without violating any privacy laws or child pornography laws, and the Defendants believe that it violated Grandson's privacy and benefited Mr. Bickford, Defendants will punish Mr. Bickford.

141.    Defendants can do so by saying that the act of photographing Grandson is not required

to be otherwise illegal, it only needs to be an act, thereby negating the laws which determine the balance between the right to freedom of expression and the right of the State to protect children against sexual exploitation. Defendants power to determine the protected status of the photograph under their own ever-changing standard asserts their belief about what should or should not be legal.

142.   SAMS also grants unbridled discretion to Defendants by making it unlawful for a "parent or person having temporary or permanent custody of a child [to take] advantage of or unjustly or improperly use[] the child for his or her own benefit." (*Brackins*).

143.   SAMS does not define "taking advantage of," "unjustly," or "improperly," and does not explain what would indicate that an act is "unjust," or "improper," or a "taking advantage of," nor does it indicate how that phrase would be applied.

144.   This language allows Defendants to censor speech out of dislike for particular content and viewpoints, allows Defendants to hide inappropriate content and viewpoint discrimination behind this language, and allows for Defendants to constantly redefine the law to the detriment of the accused.

145.   Anytime Mr. Bickford takes a photograph that is protected under Maryland law, Defendants can determine it to be improper and punish Mr. Bickford for taking the photo.

146.   Because almost any expression could violate the extraordinary reach of SAMS, Defendants have unbridled discretion to pick and choose which expressions violated the law, thereby subjecting the First Amendment rights of Mr. Bickford – and any other person who has temporary or permanent custody of a child – to the whims of government officials.

**SAMS Conditions Benefits on Surrender of Rights**

24

147. The First Amendment's Free Speech Clause prohibits the government from conditioning a benefit on the relinquishment of a constitutional right.

148. SAMS imposes a content and viewpoint-based litmus test on the ability of parents, including Mr. Bickford, to express themselves with children.

149. Mr. Bickford has the First Amendment right associate with his Grandson, to choose the content of his expressions, to promote the messages he wants to promote, and to share his ideas as he deems desirable while restricting himself from engaging in speech determined unprotected under a narrowly tailored law enacted to regulate a specific category of speech.

150. But SAMS, and Defendants application of SAMS, mandates that Mr. Bickford limit his speech to his guess of what speech SAMS prohibits, or what the Defendants would dislike, and bans Mr. Bickford from engaging in expression that is specifically protected under other Maryland laws, thereby conditioning the receipt of an essential benefit – specifically the right to associate with his Grandson – on his willingness to surrender these First Amendment rights.

**SAMS is Overbroad**

151. SAMS is objectively overbroad because it prohibits "parent or person having temporary or permanent custody of a child [to take] advantage of or unjustly or improperly use[] the child for his or her own benefit."

152. The right to freedom of speech and expression is defined by Maryland's laws that are narrowly tailored to regulate specific classes of unprotected speech.

153. SAMS nullifies the protections of these laws and abridges access to expression and speech for all Marylanders who are parents expressing themselves with children in their custody.

154.   This language prohibits too many protected statements and expressions, including any type of expression made by a parent with a child in their care that the Defendants dislike.

155.   Nothing in SAMS limits its scope to unprotected speech; and it has been authoritatively construed to prohibit a wide swath of protected speech – including producing photographs that are specifically protected under law.

156.   SAMS prohibits too much activity – including taking a child to an "R" rated movie.

157.   SAMS' treatment of parents as "disfavored speakers" imperils speech because it allows Defendants to hide their content-based discriminatory practices.

158.   Further, SAMS restriction on parental speech to include "improper speech" imperils even more speech because what constitutes "improper" is unknowable and thus permits enforcement officials to hide their viewpoint discrimination and advance their personal beliefs.

**The First Amendment Violations Chill Plaintiff's Speech and Fails Strict Scrutiny**

159.   Absent SAMS, Plaintiff will immediately begin filming or photographing his Grandson.

160.   Mr. Bickford is ready to begin to collect photographic evidence of his Grandson's milestones, including using the big boy potty, bathing by himself, and other sensitive situations.

161.   Mr. Bickford is ready to begin to hug and kiss his Grandchild and engage in other forms of physical bonding including hand holding or patting on the buttocks.

162.   Mr. Bickford is ready to begin speak the words "I love you" to his Grandson, along with other statements of fondness and desire to be with him.

163.   Mr. Bickford's expressive activities would be for his own benefit or interest.

164.   The only thing preventing Mr. Bickford from doing these things is SAMS, and Defendants' application thereof, in a way that punishes those who express themselves in a way

that Defendants dislike or deem improper.

165. Because of SAMS, Mr. Bickford is chilled, deterred, and restricted from engaging in his desired expressions with his Grandson.

166. Mr. Bickford is currently suffering the ongoing harm of self-censorship of his desired, protected expression in order to avoid penalties under SAMS.

167. SAMS provision prohibiting statements, photography, and non-verbal communication when determined to be "improper," "unjust," or "taking advantage of" "for his...own benefit," and the Defendants' application and enforcement of that provision chills, deters, and restricts not only Mr. Bickford's speech but the speech of other parents as well.

168. If not for SAMS, Mr. Bickford would immediately photograph his Grandson in a lawful manner previously punished under SAMS, write to Grandson expressing lawful messages previously punished under SAMS, and engage in lawful physical expressions of love similar to what has been previously punished under SAMS.

169. Because SAMS infringes First Amendment free speech rights, it must further a compelling interest in a narrowly tailored way.

170. SAMS does not serve any legitimate interest in a narrowly tailored way by forcing Mr. Bickford to violate his First Amendment free speech rights.

171. Defendants have alternative, less restrictive means to achieve any legitimate interests rather than forcing Mr. Bickford to violate his First Amendment rights.

172. Accordingly, as applied to Mr. Bickford, SAMS prohibition of expression, including photography, filming, writing, speaking, and familial touching, that is perceived as a "taking advantage of," or "unjust," or "improper" use of a child "for his or her own benefit," that is not

27

prohibited by a narrowly tailored law enacted to regulate those expressions, infringes Mr. Bickford's rights as protected by the First Amendment of the United States Constitution.

173. Accordingly, facially and as applied to Mr. Bickford solely because he is a "family member" of his Grandson, SAMS' prohibition of expression, including photography, filming, writing, speaking, and familial touching, that is perceived as a "taking advantage of," or "unjust," or "improper" use of a child "for his or her own benefit," that is not prohibited by a narrowly tailored law enacted to regulate those expressions, infringes Mr. Bickford's right to express himself as he desires as guaranteed by the First and Fourteenth Amendments of the United States Constitution.

174. WHEREFORE, Plaintiff respectfully asks that the Court grant the relief specified in the Prayer for Relief.

## Second Cause of Action:
## Violation of Plaintiff's Fourteenth Amendment Right to Equal Protection

175. Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1-112 of this complaint.

176. The government may not treat someone disparately as compared to similarly situated persons when such disparate treatment burdens a fundamental right.

177. Plaintiff is similarly situated to other persons who express themselves and their ideas with or about children.

178. SAMS, and Defendants' enforcement thereof, treats plaintiff's and other parent's expression with or about children differently than from those similarly situated non-parents by prohibiting and punishing Plaintiff for engaging in expression determined not to be child sexual

28

exploitation under the narrowly tailored laws regulating the expression of non-parents.

179.    SAMS, and Defendants' enforcement thereof, makes it illegal for Mr. Bickford to photograph his Grandson if Defendant's find it improper and for Mr. Bickford's amusement, or for a teacher to photograph a student if the depiction focuses on the bare legs and buttocks of the child without explaining why the photo was taken, and imposes severe penalties while permitting non-parents to engage in the same photography under the statutes narrowly tailored to regulate that expression.

180.    That SAMS prohibits Mr. Bickford and other parents, but permits non-parents to express themselves with children in a way that Defendants find objectionable, is revealed by the different outcomes reached by Defendants in prosecuting and determining guilt related to the sexual exploitation of a minor for similarly situated Rodney Bible and Larry Tribbitt.

181.    SAMS and Defendants' application thereof treats Plaintiff's expression differently from those similarly situated non-parents by permitting those non-parents to express themselves with children within the limits of the narrowly tailored laws enacted to determine whether expression is unprotected, while imposing severe penalties against Plaintiff for expression that is within the limits of those same narrowly tailored laws.

182.    That SAMS and Defendants' application thereof treats Plaintiff's expression differently is revealed by the outcomes of Scriber v. State and Tribbitt v State, where each defendant was found guilty of sexually exploiting a minor under SAMS, for conduct determined legal under the Counts alleging that the act in question constitutes sexual exploitation under a narrowly tailored law.

183.    SAMS, and Defendants' discriminatory enforcement thereof, violates several

fundamental rights of the Plaintiff, such as his freedom of speech and right to due process of law and right to equal protection of law.

184. When the enforcement of laws, like SAMS, infringe on such fundamental rights, courts presume discriminatory intent.

185. In this case, the presumption of discriminatory intent is borne out by Defendants' intentional discrimination against the right to exercise free speech by Plaintiff, and those like Plaintiff, who are parents of children that wish to express ideas with or about children.

186. The discriminatory intent is also shown by the different outcomes reached by Defendants in applying the Maryland laws related to the sexual exploitation of minors to Plaintiff, and those like Plaintiff, compared to non-parents like Rodney Bible.

187. Defendants lack any legitimate, rational, substantial, or compelling state interest for such disparate treatment of Plaintiff.

188. Defendants' disparate treatment of Plaintiff, and those like Plaintiff, is not narrowly tailored to further any legitimate governmental interest Defendants' may allege.

189. SAMS, as applied to Plaintiff, therefore violates his to equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution.

190. WHEREFORE, Plaintiff respectfully requests that the Court grant the relief specified in the Prayer for Relief.

### Third Cause of Action:
### Violation of Plaintiff's Fourteenth Amendment Right to Due Process

191. Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1-112 of this complaint.

192. The Fourteenth Amendment to the United States Constitution guarantees Plaintiff the right to due process of law, which includes the right to express his ideas in myriad ways with or about children for his own benefit free from unreasonable governmental interference.

193. SAMS unreasonably interferes with Plaintiff's due process rights by threatening him with punishment, if he does only what narrowly tailored laws permit him to do or protect him from prosecution for doing, based on his social status as a being a "family member."

194. The Due Process Clause of the Fourteenth Amendment also prohibits the government from censoring speech or outlawing behavior pursuant to vague standards that grant unbridled discretion to government officials to arbitrarily prohibit some expression and action and that fail to give speakers and actors sufficient notice of whether their speech or actions violate the law.

195. SAMS contains vague language because it prohibits a person from exploiting a minor, authoritatively construed to mean "took advantage of or unjustly or improperly used a child "for his or her own benefit."

196. SAMS never defines exploitation, or what it means to "take advantage of," or "unjustly," or "improperly," use a child.

197. SAMS fails to explain whether these terms are uniform in meaning, given the different connotations of the terms, or whether there is a distinction between "unjust" and "improper," and how that distinction must be applied.

198. SAMS also fails to explain what statements or actions indicate that someone is "taking advantage of or unjustly or improperly" using a child.

199. SAMS also fails to define what constitutes a "benefit," how that element may be

determined, or when that element constitutes specific intent or special mens rea.

200.    The vague language grants Defendants unbridled discretion to censor speech out of dislike for the content itself and hide their discrimination behind vague language.

201.    The vague language, and Defendants' unbridled discretion to choose how to enforce the language, prevents potential speakers from knowing whether their speech violates the law.

202.    Anytime Plaintiff, or other parents, expresses the idea that a child is beautiful by taking a picture of the child, consistent with a determination of protected expression, not child sexual exploitation, under Maryland's child pornography laws, Defendants could determine that the expression constitutes the sexual exploitation of a minor because they think it was "improper."

203.    Thus, citizens of common intelligence must guess about what it means to engage in expression that indicates a parent "took advantage of or unjustly or improperly used a child for his or her own benefit" when in a parental role because of they will differ in the conclusions they reach in making this assessment.

204.    SAMS provides insufficient warning or notice as to what expression is prohibited.

205.    SAMS also provides insufficient warning or notice that it will be applied to undermine the protections of other, more specific Maryland laws.

206.    Because almost any expression could be viewed as "unjust" even if "just" under other Maryland laws, Defendants must pick and choose which expressions violate SAMS.

207.    Therefore, the rights of Plaintiff and other Maryland citizens in a parental role now turn on the whim of government officials, and Plaintiff and other Maryland citizens in a parental role therefore cannot know whether their desired speech violates the law.

208.    Because SAMS does not provide sufficient clarity to those who desire to express

32

themselves, and empowers Defendants to impose severe penalties on speakers whose otherwise legal expressions they disfavor, Plaintiff has not, and will not, engage in his desired expressions with or about his Grandson to avoid violating SAMS and incurring the accompanying penalties.

209.   If not for the vagueness in SAMS, Plaintiff would engage in his desired expressions with and about his Grandson immediately.

210.   SAMS chills, deters and restricts Plaintiff's speech.

211.   Plaintiff currently suffers ongoing harm because of SAMS – namely, the self censorship and suppression of his protected speech to avoid violating SAMS and incurring penalties.

212.   Because SAMS chills, deters, and infringes on the due process rights of Plaintiff, and other citizens, SAMS must further a compelling interest in a narrowly tailored way.

213.   Defendants have no legitimate, rational, substantial, or compelling interest in stopping Plaintiff from engaging in expression plainly legal for non-parents.

214.   Defendants have no legitimate, rational, substantial, or compelling interest in stopping Plaintiff from engaging in expression that is determined not to constitutes child sexual exploitation under Maryland's child pornography laws.

215.   Defendants have no legitimate, rational, substantial, or compelling interest in stopping Plaintiff from engaging in expression that parents are specifically protected from prosecution for possessing under Maryland's child pornography laws.

216.   SAMS, and Defendants, do not serve any legitimate interest in a narrowly tailored way by stopping Plaintiff from engaging in expression that is determined not to constitute child sexual exploitation, or expression that parents are specifically protected from prosecution for

possessing, under Maryland's child pornography laws.

217. Defendants have no legitimate, rational, substantial, or compelling interest in using vague language to deter Plaintiff from engaging in his desired expression.

218. SAMS and Defendants do not serve any legitimate interest in a narrowly tailored way in using vague language to deter Plaintiff from engaging in his desired expression.

219. Defendants have many other alternative, less restrictive mechanisms to achieve any legitimate interests.

220. Accordingly, facially and as applied to Plaintiff, SAMS violates his right to due process as guaranteed by the Fourteenth Amendment of the United States Constitution.

221. Accordingly, as applied to Plaintiff, SAMS violates his right to due process as guaranteed by the Fourteenth Amendment of the United States Constitution.

### Fourth Cause of Action:
### Fourteenth Amendment Substantive Due Process and Equal Protection Challenge to Denial of Personal Dignity, Personal Autonomy, and Personal Liberty

222. Plaintiff repeats and re-alleges each of the allegations contained in paragraphs 1-112 of this complaint.

223. The Supreme Court's majority opinion in *Obergefell v Hodges*, 135 S. Ct. 2584 (2015), and other Supreme Court precedent, dictates that the Fourteenth Amendment protects the liberty of individuals to make choices central to their own dignity and autonomy, including choices that define their personal identity and beliefs.

224. According to Supreme Court precedent, such as *Obergefell*, while a state can have its own views of the ideal ordering of society, when it imposes those beliefs through law with the necessary consequence of putting the imprimatur of the State on excluding people with certain

personal beliefs from the pursuit of basic liberties, they demean and stigmatize those individuals in a manner forbidden by the Fourteenth Amendment.

225. To deny certain people the right to engage in expression that is consistent with their own concepts of existence and identity is to deny them liberty, disparage their intimate personal choices and identity, and devalue their person-hood.

226. David's belief that there is no shame associated with nudity, sexuality or the development of sexuality is central to his dignity, autonomy, and identity.

227. David's decisions to photograph his Grandson – including while nude and exhibiting his genitals – is consistent with his belief that there is no shame in such exhibitions or depictions so long as they do not constitute child pornography.

228. David cannot live consistently with his beliefs and identity if he is required to refrain from expressing himself as he desires in accord with his beliefs.

229. David's belief that there is no legitimate association between nudity, sexuality and shame is inextricably intertwined with his own identity, beliefs, equal dignity as a citizen, and personal autonomy.

230. David's desire to express his love and adoration, and to dote on his grandchild's growth, maturation and antics, through myriad forms of expressive activity is central to his personal identity and beliefs and is central to his equal dignity as a citizen and personal autonomy.

231. David's ability to pursue his desired expressions comes within the definition of "liberty" under the Due Process Clause.

232. The Definition of "liberty" under the Due Process Clause further protects his right to express his understanding of child development and establishes his non-religious self-definition

in the political and civic life of the larger community.

233.    SAMS' requirement that David censor his desire to express himself with his Grandchild based upon Defendants' understanding of right or wrong devalues his self-dignity, dignity, liberty, intimate personal choices, and person-hood and denies his dignity as an equal citizen, stigmatizes him as a social pariah, disallows him from pursuing his chosen expressions, and punishes him in violation of the Fourteenth Amendment.

234.    Because SAMS infringes these rights under the Fourteenth Amendment, it must further a compelling interest in a narrowly tailored way.

235.    SAMS does not serve any legitimate, rational, substantial, or compelling interest by forcing David to adopt an association of shame with nudity and sexuality and abandon his identity, equal dignity as a citizen, personal autonomy, and liberty, and instead impose a gross stigma and denying David's equal dignity as a citizen.

236.    In addition to SAMS not serving a legitimate – let alone compelling – interest, it is not narrowly tailored to do so regardless.

237.    Defendants have other alternative, less restrictive means to achieve any legitimate interest rather than forcing David to abandon his non-religious identity, personal identity, equal dignity as a citizen, personal autonomy, and personal liberty and face government-imposed stigma.

238.    Accordingly, as applied to David, SAMS denies David the right to make intimate choices that define his identity, personal dignity, personal autonomy, and personal liberty, and instead stigmatizes David and denies his equal dignity as a citizen in violation of the Fourteenth Amendment of the United States Constitution.

239.   WHEREFORE, Plaintiff respectfully asks that the Court grant the relief specified in the prayer for relief.

## PRAYER FOR RELIEF

240.   WHEREFORE, Plaintiff asks this Court to enter judgment against Defendants and to provide the following relief:

1.   A preliminary injunction and permanent injunction to stop Defendants Moore and Brown and any person acting in concert with them from enforcing SAMS facially, and/or as applied to Plaintiff's desired expression (a) to undermine narrowly tailored laws enacted to regulate specific categories of speech, (b) to determine whether expressive conduct constitutes a crime absent a finding under a narrowly tailored law enacted to regulate a specific category of speech that the conduct is unprotected expression, and (c) to undermine the protections provided to parents under narrowly tailored laws enacted to regulate specific categories of speech;

2.   A declaration that SAMS violates the United States Constitution's Free Speech Clause, Equal Protection Clause, and Due Process Clause facially and as-applied to Plaintiff's desired communications and expressions (a) as a Grandparent or Family member with his Grandson, (b) that are protected under narrowly tailored laws enacted to determine the balance between the right to freedom of expression and the right of the State to protect children from sexual exploitation, (c) in a way that abridges the freedom of speech compared to non-parents (d) in a way that denies equal dignity as a citizen;

3.   This court adjudge, decree and declare the rights of other legal relations of the parties to the subject matter here in controversy so that these declarations shall have the

force and effect of a final judgment;

4. That this Court retain jurisdiction of this matter for the purpose of enforcing its orders;

5. That this Court award the Plaintiff costs and expenses of this action in accordance with 42 U.S.C. § 1988;

6. That this Court issue the requested injunctive relief without a condition of bond or other security being required of Plaintiff;

7. That this Court grant any other relief that it deems equitable and just in the circumstances.

Respectfully Submitted this 24th day of February, 2025

David Paul Bickford
19831 Harmony Hill Ln
Boonsboro, MD 21713
301-665-8856
bickforddavid1@gmail.com

## DECLARATION UNDER PENALTY OF PERJURY

I, David Paul Bickford, a citizen of the United States and a resident of Maryland, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this 24th day of February, 2025, at Boonsboro, Maryland.

David Paul Bickford
19831 Harmony Hill Ln
Boonsboro, MD 21713
301-665-8856
bickforddavid1@gmail.com

38