IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

DAVID PAUL BICKFORD,
    *Plaintiff,*

    v.

WES MOORE, *et al.,*
    *Defendants.*

Case No. 25-cv-658-ABA

**MEMORANDUM OPINION**

Plaintiff David Bickford, who is self-represented, brings several constitutional challenges to § 3-602 of the Maryland criminal code, which prohibits "sexual abuse of a minor." Md. Code Ann., Crim. Law § 3-602 (2023) (hereafter, "CR § 3-602"). Bickford was previously convicted of sexual abuse by exploitation of his daughter. In this case he does not challenge that conviction, but rather seeks an order that § 3-602 is unconstitutional on its face and as applied to him because he desires to interact with his grandson in ways that would violate § 3-602. Bickford contends that the statute violates his First Amendment rights as well as his equal protection and due process rights. He has moved for a preliminary injunction against enforcement of the law, and Defendants (the Governor and Attorney General of Maryland) have moved to dismiss. For the reasons below, the Court will grant Defendants' motion to dismiss and deny the motion for a preliminary injunction.

## I.    BACKGROUND

Section 3-602 makes it a crime for a "household member or family member" or a "person who has permanent or temporary care or custody or responsibility for the supervision of a minor" to "cause sexual abuse to the minor." CR § 3-602(b). "Sexual

abuse" is defined as "an act that involves sexual molestation or exploitation of a minor, whether physical injuries are sustained or not." *Id.* § 3-602(a)(4)(i).

Sexual "exploitation" is not defined in the statute, but Maryland courts have interpreted it to mean that "the defendant 'took advantage of or unjustly or improperly used the child for his or her own benefit.'" *Turenne v. State*, 488 Md. 239, 267 (2024) (quoting *Degren v. State*, 352 Md. 400, 426 (1999)) (emphasis omitted). In the statutory phrase "sexual molestation or exploitation," the word "sexual" modifies both "molestation" and "exploitation." CR § 3-602(a)(4)(i); *Walker v. State*, 432 Md. 587, 615–17 (2013). Thus, to prove that a person committed sexual "exploitation" the state must prove that "the exploitation" was "of a sexual nature*,*" *Walker*, 432 Md. at 616, regardless of whether "the defendant personally received sexual gratification from the conduct." *Turenne*, 488 Md. at 267; *see also Turenne v. State*, 258 Md. App. 224, 255 (2023), *aff'd*, 488 Md. 239 ("[T]here must be some sexual aspect to the conduct alleged to be exploitive."). Maryland courts have "rejected the argument that the definition of 'sexual abuse' [is] limited to otherwise criminal acts," such as child pornography or violence. *Scriber v. State*, 236 Md. App. 332, 347 (2018); *see also Tribbitt v. State*, 403 Md. 638, 646–47 (2008) (explaining that the list of acts that constitute child sexual abuse in § 3-602(a)(4)(ii) is meant to be indicative, not exclusive). Accordingly, "sexual exploitation in the context of child sexual abuse 'is not limited to incidents involving physical contact and can include a wide range of behavior.'" *Turenne*, 488 Md. at 267 (quoting *State v. Krikstan*, 483 Md. 43, 51 (2023)). Maryland law applies a "content-plus-context" standard to determine whether a defendant's conduct is sexually exploitative, "view[ing] the facts surrounding [the] alleged sexual exploitation 'in their totality.'" *Id.* at 268.

Bickford states that he is a "[g]randfather . . . who desires to be able to express his love and admiration for his grandchild in his own way and on his own terms, free from arbitrary government interference." ECF No. 1 ¶ 2.[1] In connection with what Bickford describes as his "unique personality," *id.* ¶ 3, and his alleged belief that "there is no legitimate or rational association between nudity, sexuality, and shame," *id.* ¶ 75, he wishes to "photograph or film his grandson when his grandson is unaware he is being filmed, or while his grandson is in his bedroom, or when his grandson may be partially nude"; "write letters describing his love for his grandson, or . . . his desire to vacation with his grandson or . . . his desire to hug, kiss or hold hands with his grandson[]"; and "to express love through physically intimate acts such as kissing, hugging, or patting the buttocks of his grandson." *Id.* ¶ 9. Bickford contends that § 3-602 would criminally penalize him for taking these actions, but he also contends that he has a right under the U.S. Constitution to take these actions even if they violate § 3-602 (which he does not have a right to do, as explained below). *Id.* ¶¶ 11–13.

As noted above, Bickford has already been convicted under § 3-602, in a prosecution for committing sexual abuse by exploitation of his daughter. He was sentenced to twenty-five years in prison with all but fifteen years suspended and five years' probation upon release. *Bickford v. State*, Case No. 2017-95, 2018 WL 2215485, at *16 (Md. App. Ct. May 15, 2018). His sexual abuse conviction was upheld on appeal and his federal habeas challenge was denied. *See id*; *Bickford v. Warden of E. Corr. Inst.*, Case No. 21-cv-1561-GLR, 2023 WL 6896960 (D. Md. Oct. 19, 2023), *aff'd in part, appeal dismissed in part sub nom. Bickford v. Dir. of Patuxent Inst.*, Case No. 23-7159,

---

[1] At the pleading stage, the Court will accept all plausible factual allegations in the complaint as true.

2025 WL 1720510 (4th Cir. June 20, 2025). That case is distinct from this one, but an overview of its facts is relevant to standing and other legal issues discussed below. A jury convicted Bickford after hearing evidence that he had installed a hidden camera in the bathroom of his home to take photographs and videos of his fifteen-year-old daughter, some of which showed her "partially or completely nude." *Bickford*, 2018 WL 2215485, at *1. Bickford's daughter testified regarding "interactions with Bickford of a sexual nature," including one in which he asked her "[i]f [she] would ever have sex with him." *Id.* at *2. Bickford's internet history corroborated the sexual nature of his conduct towards his daughter, such as a Google search using the query "Do girls want to have sex with their dad?" *Id.* at *3. On appeal, the Appellate Court of Maryland affirmed Bickford's conviction under § 3-602, finding that there was more than sufficient evidence for the jury to conclude that Bickford had acted "for his own sexual gratification" and "sexually exploited his daughter." *Id.* at *16. The court reversed his conviction on another count, for visual surveillance under Md. Code Ann., Crim. Law § 3-902(c)(1), only because Bickford's home was not legally a place of public use or accommodation as required by the statute. *Id.* at *15–16

In this case, Bickford contends § 3-602 is unconstitutional for four reasons. First, he contends it violates the First Amendment facially and as applied to him because it reflects content and viewpoint discrimination and is overbroad. ECF No. 1 ¶¶ 113–74. Second, he contends it violates equal protection as applied to him because it treats family members and those with permanent or temporary custody or supervision over minors differently from similarly situated people not covered by the statute. *Id.* ¶¶ 175–90. Third, Bickford contends the statute violates due process because the definition of "exploitation" is impermissibly vague. *Id.* ¶¶ 191–221. Finally, he claims that the statute

violates his substantive due process right in expressing himself with his grandson, which he contends is guaranteed by the Fourteenth Amendment. *Id.* ¶¶ 222–39.

Bickford also has filed a motion for a preliminary injunction. ECF No. 17. Defendants have filed a motion to dismiss. ECF No. 18. Both motions are fully briefed.

## II.   LEGAL STANDARD

When a defendant asserts that, even assuming the truth of the alleged facts, a complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and state a facially plausible claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering such a motion, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

## III.   DISCUSSION

### A.   First Amendment

#### i.   Standing

Bickford challenges § 3-602 facially and as applied to him as a family member of his grandson who wishes to photograph, film, and write to his grandson in ways that he alleges may violate the statute. Defendants contend that Bickford can only challenge the law facially and not as applied, because he is suing to enjoin enforcement of the law prospectively. He is challenging the statute related to actions he wishes to take related to

his grandson, for which he has not already been prosecuted (Bickford's prior conviction was for abusing his daughter). Defendants further contend that "Bickford's complaint alleges only generalized hypothetical conduct or speech that he has not and cannot demonstrate . . . would lead to prosecution." ECF No. 22 at 4 n.1.[2]

That is at least partially a standing argument. Defendants contend, at least as to some of the conduct Bickford wishes to engage in with his grandson, that he lacks a cognizable injury because his pleadings do not include the desire to express or conduct himself in ways that could reasonably lead to his prosecution. To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). "Article III most centrally requires that a court begin with a case, and usually a case involving concrete facts and allegations of harm caused by the defendant that can be redressed by the court." *Richmond Med. Ctr. For Women v. Herring*, 570 F.3d 165, 172 (4th Cir. 2009). A plaintiff asserting a constitutional challenge to a statute must have Article III standing regardless of whether the challenge is facial or as applied. *See Benham v. City of Charlotte, N.C.*, 635 F.3d 129, 135 (4th Cir. 2011). "When a plaintiff faces a credible threat of prosecution under a criminal statute he has standing to mount a pre-enforcement challenge to that statute." *N. Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999). "[A] law that 'facially restrict[s] expressive activity by the class to which the plaintiff belongs' presents such a credible threat [of prosecution].'" *Preston v. Leake*, 660 F.3d 726, 735 (4th Cir. 2011) (quoting *N. Carolina Right to Life*,

---

[2] Citations to page numbers refer to CM/ECF pagination for this and the other filings referenced herein, which may not align with a document's original page numbering.

168 F.3d at 710). Plaintiffs may establish standing for a First Amendment claim by showing that they are "refrain[ing] from exposing themselves to sanctions under the [statute], instead making a 'sufficient showing of self-censorship'—establishing, that is, a 'chilling effect' on their free expression that is 'objectively reasonable.'" *Abbott v. Pastides*, 900 F.3d 160, 176 (4th Cir. 2018) (quoting *Cooksey v. Futrell*, 721 F.3d 226, 235–36 (4th Cir. 2013)).

Defendants' argument that Bickford cannot bring a pre-enforcement as-applied challenge merely because "[h]e is not currently being prosecuted under the statute" is incorrect. ECF No. 22 at 4 n.1. As the standards above indicate, "a credible threat of enforcement of a statute as to a specific plaintiff gives that plaintiff standing to mount an as-applied challenge to a statute." *Schiff v. Brown*, Case No. 23-cv-338-DKC, 2023 WL 6878968, at *6 (D. Md. Oct. 18, 2023), *aff'd in part, appeal dismissed in part*, Case No. 23-2219, 2024 WL 414121 (4th Cir. Feb. 5, 2024). The Fourth Circuit explicitly allowed a pre-enforcement, as-applied First Amendment challenge in *Preston*. 660 F.3d at 735.

The government is correct, however, that some of the actions Bickford wishes to take would not be unlawful when considered in isolation or form the basis for an objectively reasonable, credible fear of prosecution. The content of some of Bickford's proposed actions, at least how he describes them, are not "of a sexual nature," as required for conviction under § 3-602. *Walker*, 432 Md. at 615. For example, no reasonable plaintiff would think that he is subject to prosecution for "express[ing] his desire to vacation with his grandson," absent further incriminating circumstances. ECF No. 1 ¶ 9.

But as to other allegations, Bickford's proposed actions when considered together and particularly given the context of his prior conviction establish a sufficient probability of prosecution under § 3-602 to give him as-applied standing, especially in view of the "content-plus-context" standard that Maryland courts apply. For example, Bickford's complaint states that he wishes to film or photograph his grandson partially nude without his grandson's knowledge. ECF No. 1 ¶ 9. This includes his desire to "photograph his Grandson . . . including during moments that would be particularly embarrassing for his Grandson, or be viewed as improper, or may appear to be for [Bickford's] benefit," *id.* ¶ 84, including photographs of his grandson "while nude and exhibiting his genitals." *Id.* ¶ 227. Bickford states that he believes that his grandson should have "several kinds of social interaction . . . even if some interaction may seem unjust or embarrassing for his Grandson." *Id.* ¶ 80. These statements, which are disturbing to say the least, particularly given Bickford's repeated emphasis that he wishes to express to his grandson that he "does not associate shame with nudity or sexuality," *id.* ¶ 18, are enough to indicate that Bickford wishes to undertake inappropriate and exploitative actions that would be prohibited by § 3-602, and is allegedly refraining from doing so (for good reason) in part due to a fear of prosecution. Bickford's prior conviction under the statute, which was for hidden-camera photographs of a minor in a bathroom, is further indication that the conduct Bickford wants to engage in would violate the statute and that the threat of prosecution is credible. *See Abbott*, 900 F.3d at 176 ("The most obvious way to demonstrate a credible threat of enforcement in the future, of course, is an enforcement action in the past.").

Accordingly, Bickford has standing to challenge enforcement of § 3-602 as applied to him, to the extent he wishes to undertake conduct with his grandson that may

be objectively of a sexual nature. To the extent Bickford wishes to conduct himself in a non-sexual nature with his grandson, he lacks standing for an as-applied challenge to § 3-602 because, as explained, the statute requires the *conduct* involved to be sexual (even if the defendant does not receive sexual gratification from it). *See Roswell v. Mayor & City Council of Baltimore*, 712 F. Supp. 3d 612, 623 (D. Md. 2024) ("Any alleged 'chilling effect' must be objectively reasonable, and '[s]ubjective or speculative accounts' of a chilling effect are insufficient to establish an injury-in-fact.") (quoting *Cooksey*, 721 F.3d at 236). Bickford only has standing to challenge the law as applied to him for expression for which he has a reasonable, non-speculative fear of prosecution, which here means only expression of a sexual nature.

Bickford has standing more broadly for his overbreadth facial challenge. The rules for standing in a facial challenge on First Amendment grounds are "somewhat relaxed." *Chase v. Town of Ocean City, Md.*, Case No. 11-cv-1771-ELH, 2015 WL 4993583, at *7 (D. Md. Aug. 19, 2015). "[T]he overbreadth doctrine instructs a court to hold a statute facially unconstitutional even though it has lawful applications, and even at the behest of someone to whom the statute can be lawfully applied." *United States v. Hansen*, 599 U.S. 762, 769 (2023). In the context of his facial overbreadth challenge, as explained in more detail below, Bickford has broader standing to challenge § 3-206 (although all of his claims, including his overbreadth claim, fail on the merits).

### ii.    Merits

Bickford contends essentially that § 3-602 impermissibly discriminates based upon content and viewpoint and is overbroad. ECF No. 1 ¶¶ 113–174. These arguments fail.

First, § 3-602 as applied to sexual exploitation of minors does not regulate protected speech. The First Amendment prohibits the federal government from "abridging the freedom of speech," and the Fourteenth Amendment makes this prohibition applicable to state governments. *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019). But not all expression is protected. Instead, several categorical exceptions have been recognized since the founding. *See United States v. Stevens*, 559 U.S. 460, 468 (2010) ("From 1791 to the present . . . the First Amendment has permitted restrictions upon the content of speech in a few limited areas, and has never included a freedom to disregard these traditional limitations.") (cleaned up). Two such exceptions are relevant here: "speech integral to criminal conduct," *id.*, and child sexual abuse material.

In *New York v. Ferber*, the Supreme Court explained that the production of material reflecting child sexual abuse is not protected by the First Amendment. 458 U.S. 747, 757 (1982) ("States are entitled to greater leeway in the regulation of pornographic depictions of children."). This is because, in part, "[t]he prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *Id.* at 757. Though *Ferber* dealt with production of child pornography specifically, its reasoning was focused on preventing harms related to the exploitation of children, not on the specific form of the material. Thus, "speech that itself is the record of sexual abuse" of children is not protected by otherwise-applicable First Amendment prohibitions, such as the standards concerning content-based regulation. *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 250 (2002); *see also Stevens*, 559 U.S. at 470 ("[W]ithin these categories of unprotected speech, 'the evil to be restricted so overwhelmingly outweighs the expressive interests, if any, at stake, that no process of

10

case-by-case adjudication is required' because 'the balance of competing interests is clearly struck.'") (quoting *Ferber*, 458 U.S. at 763–64).

In addition to images that reflect sexual exploitation of children, speech that is integral to crimes is likewise unprotected by the First Amendment. "[T]he First Amendment does not prohibit legislatures from 'mak[ing] a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language, either spoken, written, or printed.'" *United States v. Arthur*, 160 F.4th 597, 608 (4th Cir. 2025) (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949)). The "speech integral to criminal conduct" exception applies to "a wide variety of crimes that are often committed through speech." *Id.*; *see also Rice v. Paladin Enters., Inc.*, 128 F.3d 233, 243 (4th Cir. 1997) ("It is . . . well established that speech which, in its effect, is tantamount to legitimately proscribable nonexpressive conduct may itself be legitimately proscribed, punished, or regulated incidentally to the constitutional enforcement of generally applicable statutes."). In *Schiff v. Warden*, for example, the court denied a habeas challenge to a conviction under Maryland's harassment and stalking statutes, approving the state court's reasoning that the Petitioner's "sexually charged statements" were "'integral to criminal conduct' and thus not protected by the First Amendment." Case No. 22-cv-3332-TDC, 2024 WL 4711994, at *9 (D. Md. Nov. 7, 2024).

Here, all of the communicative acts that Bickford proposes in his complaint (and that would actually violate the statute) fall under either the exception for child sexual abuse material or speech as integral to criminal conduct. To the extent he proposes to produce images of his grandson nude or partially nude in a sexual manner or for sexual gratification (again, some kind of connection to sex or sexualization would be required

11

for prosecution under § 3-602), a regulation on such material is categorically acceptable, and not subject to First Amendment scrutiny under *Ferber*.[3] To the extent he proposes to write or talk to his grandson in a sexually exploitative manner, such expressions would be integral to criminal conduct, and are not protected First Amendment activity. For this reason, the Court rejects Bickford's content- and viewpoint-based discrimination argument regarding § 3-602 as applied to his proposed conduct.

For the same reasons, the Court also rejects Bickford's facial challenge on content or viewpoint grounds to the extent he intends to bring one. "To succeed in a typical facial attack," the Plaintiff must "establish 'that no set of circumstances exists under which [the statute] would be valid,' or that the statute lacks any 'plainly legitimate sweep.'" *Stevens*, 559 U.S. at 471 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987) and *Washington v. Glucksberg*, 521 U.S. 702, 740 n.7 (1997)). As explained, § 3-602 does not violate the First Amendment to the extent it regulates child sexual abuse material or communications constituting sexual exploitation of children. A large swath of prosecutions under § 3-602 are thus constitutional, and Bickford's direct facial challenge must fail as well, even accepting the allegations in his complaint as true.

"In the First Amendment context" there is "a second type of facial challenge," namely overbreadth. *Stevens*, 559 U.S. at 473. Given the concern that overbroad laws "may deter or 'chill' constitutionally protected speech—especially when the overbroad

---

[3] *Ferber* imposes a further requirement that the conduct in child sexual abuse material statutes must be "adequately defined by the applicable state law, as written or authoritatively construed." 458 U.S. at 764. To the extent this inquiry is separate from the overbreadth analysis discussed below, § 3-602 is adequately defined. As explained throughout this opinion, the statutory text and Maryland courts' interpretation clearly indicate that the exploitation involved must be sexual in nature and must involve the unjust or improper use of a child for the defendant's benefit.

statute imposes criminal sanctions," *Virginia v. Hicks*, 539 U.S. 113, 119 (2003), "the overbreadth doctrine instructs courts 'to hold a statute facially unconstitutional even though it has lawful applications, and even at the behest of someone to whom the statute *can* be lawfully applied.'" *Arthur*, 160 F.4th at 606 (quoting *Salerno*, 481 U.S. at 745). An overbreadth analysis proceeds in three steps. The first step is to "construe the challenged statute" to determine what activity it actually prohibits. *United States v. Williams*, 553 U.S. 285, 293 (2008). The second step is to "determine whether, so construed, the statute 'criminalizes a substantial amount of protected expressive activity.'" *United States v. Miselis*, 972 F.3d 518, 531 (4th Cir. 2020) (quoting *Williams*, 553 U.S. at 297)). "[A]t this step, the court must consider whether the proscribed speech falls within one of the few categories of *unprotected* speech." *Arthur*, 160 F.4th at 606. "Finally, if the statute proves 'impermissibly overbroad,'" the Court "must assess whether 'the unconstitutional portion' is 'severable' from the remainder; if so, only that portion 'is to be invalidated.'" *Miselis*, 972 F.3d at 531 (quoting *Ferber*, 458 U.S. at 769 n.24).

Bickford contends that § 3-602 is substantially overbroad because the "exploitation" portion of the statute, in his view, would "prohibit[] parents from benefiting from the use and utilization of their child in any . . . fashion, regardless of the potentially reasonable or non-criminal context." ECF No. 21 at 9. An example he posits is a parent directing a child to "mow their lawn twice per month." *Id.* He also contends the law "prohibits too many protected statements and expressions, including any type of expression made by a parent with a child in their care that the Defendants dislike." ECF No. 1 ¶ 154.

The Court's interpretation of § 3-602 and the analysis above resolves Bickford's overbreadth argument. The statute does not apply to a parent's request that their child mow the lawn; it applies to sexual exploitation. Bickford's argument misses this point, instead resting on the assumption that a large amount of non-sexual, protected speech is subject to prosecution under § 3-602. But as Maryland courts have explained, § 3-602 by its text and structure applies to exploitative conduct only that is sexual in nature. *See Walker*, 432 Md. at 616. Thus Bickford's overbreadth claim fails at step two because § 3-602 does *not* criminalize a substantial amount of protected speech. As also explained above, material that was produced via child sexual abuse is not protected by the First Amendment. Bickford has not identified any examples of *sexually* exploitive expressive acts involving minors that would constitute protected speech under the *Ferber* line of cases. The Maryland cases Bickford raises all involved factual findings that the conduct at issue *was* sexual. *See, e.g.*, *Scriber*, 236 Md. App. at 351 (jury reasonably "conclude[d] that [Defendant's] actions in taking . . . photos [of a student's legs and buttocks] were for his own benefit and constituted exploitation of a sexual nature"); *Walker*, 432 Md. at 604 (affirming conviction under § 3-602 of a teacher who had written a series of "passionate" letters to an eight-year-old student that "certainly had sexual undertones"); *Tribbit*, 403 Md. at 643 (affirming a conviction under § 3-602 in which the trial court found that the defendant touched a minor's genitals and buttocks for his own "sexual gratification"); *Turenne*, 488 Md. at 270 (jury reasonably concluded that defendant's photographs of children's genitals were "designed for sexual gratification"). Accordingly, Bickford's overbreadth argument fails.

### B.    Equal protection

Bickford's second cause of action is for violation of the Fourteenth Amendment's guarantee of equal protection under the law, as applied to family members of minors. ECF No. 1 ¶¶ 175–189. He contends that § 3-602 "treats [his] and other parent's [*sic*] expression with or about children differently than from those similarly situated non-parents[.]" *Id.* ¶ 178. Bickford's reasoning is hard to follow: he is suing in his capacity as a grandparent, not as a parent. Reading his argument charitably, his contention is that by including "family members" in the list of persons covered, § 3-602 treats family members of a victim of child sexual abuse differently than non-family members.

"The Equal Protection Clause does not forbid classifications." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). "[W]hen the state classifies a 'suspect' or 'quasi-suspect' group of people, courts apply 'heightened scrutiny,'" which is "a more exacting standard of judicial review." *M.A.B. v. Bd. of Educ. of Talbot Cnty.*, 286 F. Supp. 3d 704, 718 (D. Md. 2018) (quoting *Cleburne*, 473 U.S. at 440–42). But "[c]lose relatives," such as "parents, children, and siblings," "are not a 'suspect' or 'quasi-suspect' class." *Lyng v. Castillo*, 477 U.S. 635, 638 (1986). Such individuals "have not been subject to discrimination; they do not exhibit obvious, immutable, or distinguishing characteristics that define them as a discrete group; and they are not a minority or politically powerless." *Id.* Because family members are not a suspect class, § 3-602 must be evaluated under rational basis review for purposes of Bickford's challenge.

The statute easily passes muster. "Under rational basis review, a classification enjoys a strong presumption of validity and is constitutional as long as 'there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" *United States v. Timms*, 664 F.3d 436, 447 (4th Cir. 2012) (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). Protecting children's health and welfare is an important government purpose, and criminalizing the sexual exploitation of minors is rationally related to this goal. Bickford's equal protection challenge fails as a matter of law.

### C.   Vagueness

Bickford's third claim is that § 3-602 should be declared void for vagueness under the due process clause of the Fourteenth Amendment. He contends that the statute "contains vague language because it prohibits a person from exploiting a minor" but "never defines exploitation." ECF No. 1 ¶ 195–96. He further contends that the Maryland caselaw that defines exploitation is likewise vague, and that it gives the government "unbridled discretion to choose how to enforce" the law. *Id.* ¶ 201.

"A statute is impermissibly vague if it either (1) fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits or (2) authorizes or even encourages arbitrary and discriminatory enforcement." *United States v. Whorley*, 550 F.3d 326, 334 (4th Cir. 2008) (quoting *Giovani Carandola, Ltd. v. Fox*, 470 F.3d 1074, 1079 (2006)); *see also Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 442 (4th Cir. 2013)) ("A law is unconstitutionally vague if 'it fails to establish standards for the [government] and public that are sufficient to guard against the arbitrary deprivation of liberty interests.'") (quoting *City of Chicago v. Morales*, 527 U.S. 41, 52 (1999)). "A statute need not spell out every possible factual scenario with

'celestial precision' to avoid being struck down on vagueness grounds." *Whorley*, 550

F.3d at 334 (quoting *Vernon Beigay, Inc. v. Traxler,* 790 F.2d 1088, 1093 (4th Cir.

1986)). Instead, a court considering a void-for-vagueness challenge "must focus on

whether the [statute] is 'set out in terms that the ordinary person exercising ordinary

common sense can sufficiently understand and comply with.'" *Fusaro v. Howard*, 19

F.4th 357, 371 (4th Cir. 2021) (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 608

(1973)). "That inquiry is aided by both 'dictionary definitions and old-fashioned

common sense.'" *Id.* (quoting *Wag More Dogs Liab. Corp. v. Cozart*, 680 F.3d 359, 371

(4th Cir. 2021)).

Similar to his overbreadth argument, Bickford's vagueness theory focuses on the

term "exploitation." He contends that "'exploitation' is not even relevant to the crime of

sex abuse," and that its common-sense meanings have to do with "mining, unfair work

practices, and some forms of commercial fishing." ECF No. 21 at 13. But as explained

above, § 3-602 does not criminalize employment of a child or directing a child to assist

with chores; the statute criminalizes *sexual* exploitation of a child. As the Supreme

Court of Maryland held in *Walker*, in the statutory text "sexual molestation and

exploitation," the word "sexual" also modifies "exploitation." 432 Md. at 616. This

interpretation is well-founded. The word "exploitation" is not presented in a vacuum;

instead, it is presented in the context of a statute titled "sexual abuse of a minor" and is

followed by a list of examples of prohibited conduct that includes incest, rape, and

sexual offense. CR § 3-602(a)(4). Defendants also note the dictionary definition of

"sexual exploitation," which includes "the use of a person, esp[ecially] a child, in

prostitution, pornography, or other sexually manipulative activity." *Sexual Exploitation*,

Black's Law Dictionary (12th ed. 2024). The meaning of "exploitation" in context is clear

17

to people of average intelligence. Bickford's previous conviction and the other cases he cites do not counsel otherwise. Bickford was prosecuted for treating a child in a sexually manipulative manner, i.e. by recording nude images of his daughter without her knowledge and for his own sexual gratification. Bickford has not cited, and the Court has not uncovered, any prosecutions under § 3-602 for the mere employment of children. The meaning of the statute is reasonably clear, and it does not encourage arbitrary enforcement.

### D.  Substantive due process

Finally, Bickford asserts that § 3-602 violates a fundamental right to "express himself with his Grandchild" guaranteed by substantive due process under the Fourteenth Amendment. ECF No. 1 ¶ 222–239. He goes so far as to contend that the Supreme Court's decision in *Obergefell v. Hodges*, 576 U.S. 644 (2015), "dictates that the Fourteenth Amendment protects the liberty of individuals to make choices central to their own dignity and autonomy, including choices that define their personal identity and beliefs," *id.* ¶ 223, and that his proposed actions with his grandson are protected under this doctrine. Bickford also, at times, appears to merely be asserting that his First Amendment rights should be protected under the Fourteenth Amendment's due process clause. *See* ECF No. 21 at 14 ("Mr. Bickford has a fundamental right to free speech and expression.").

In addition to the individual rights enumerated in the Constitution and its amendments, the Fourteenth Amendment's due process clause also guarantees "a select list of fundamental rights that are not mentioned anywhere in the Constitution." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 237 (2022). To determine whether a substantive unenumerated right is protected, courts generally ask "whether the right is

deeply rooted in our history and tradition and whether it is essential to our Nation's 'scheme of ordered liberty." *Id.* (quotations and alterations omitted).

Bickford identifies no fundamental liberty interest implicated by his proposed conduct. Although parents have certain fundamental rights "to make decisions regarding the care, custody, and control of their children, that right does not transfer to grandparents." *Williams v. Burnette*, Case No. 19-cv-2584-CBD, 2020 WL 4732137, at *5 (D. Md. Aug. 14, 2020) (citations omitted); *see also Vaughn v. Foltz*, Case No. 16-cv-61-FL, 2017 WL 4872484, at *5 (E.D.N.C. Oct. 27, 2017), *aff'd*, 825 F. App'x 131 (4th Cir. 2020) ("The court is unaware of any Supreme Court or Fourth Circuit authority that recognizes a constitutionally protected liberty interest of a grandparent with regard to her grandchild[.]"). Moreover, as Defendants note, courts across numerous state and federal jurisdictions, including Maryland, have rejected the notion that child sexual abuse is entitled to protection as a fundamental liberty interest. ECF No. 18-1 at 25 (citing, among other cases, *Maxwell v. State*, 168 Md. App. 1, 15–16, 16 n.7 (Md. App. Ct. 2006)). To the extent Bickford asserts that his First Amendment rights are fundamental, he is correct. But the Court has already addressed and rejected the First Amendment challenge.

*Obergefell* does not come close to helping Bickford either. That case drew upon principles of "individual autonomy," "dignity," and the "safeguard[ing] [of] children and families" to recognize that marriage between "consenting adults" is a fundamental right protected by the Fourteenth Amendment, and is available to couples of the same sex. 576 U.S. at 665–68, 680. These principles are directly contrary to the actions Bickford proposes to undertake here. As the Appellate Court of Maryland explained in *Turenne*, "[l]inking . . . sexual orientation, particularly a same-sex orientation, to sexually abusing

children is a canard that reinforces a terrible stereotype of gay and lesbian people." 258 Md. App. at 264. Cases recognizing the fundamental liberty interest of consenting adults to have sex with or marry other consenting adults have no bearing upon the constitutionality of laws criminalizing child abuse.

Bickford has identified no substantive due process right that is implicated by § 3-602, so the law is subject to rational basis review. For the reasons explained above, the statute passes this standard.

## IV. CONCLUSION

For these reasons, the Court will grant Defendants' motion to dismiss and deny Plaintiff's motion for a preliminary injunction. Bickford may disagree with § 3-602, but he may not violate it, and the U.S. Constitution does not entitle him to do so. A separate order follows.

Date:  March 23, 2026

_____/s/_____
Adam B. Abelson
United States District Judge